UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| Gary Shamleffer, | § | CIVIL ACTION NO. _____ |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| Akal Security, Inc., | § | |
| Defendant. | § | A JURY IS DEMANDED |

## ORIGINAL COMPLAINT

If Gary Shamleffer had been judged on the quality of his work, he never would have lost his job as a Court Security Officer guarding the federal judiciary in Baltimore. Although he performed his job as a Court Security Officer with distinction, he lost his job because of disability discrimination.

## PARTIES

1. The plaintiff Gary Shamleffer is an individual who resides in Baltimore, Maryland.

2. The defendant Akal Security, is a New Mexico corporation doing business in Maryland, and may be served with process by serving its registered agent, The Corporation Trust, Inc., 351 West Camden Street, Baltimore, MD 21201.

## JURISDICTION

3. This case is brought under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. This Court has jurisdiction of this case according to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

4. Venue is invoked pursuant to 28 U.S.C. § 1391.

## STATEMENT OF THE PLAINTIFFS' CASE

5.      The plaintiff, Gary Shamleffer, is well-qualified to guard the federal judiciary. After working in Army intelligence and as a background investigator for the Defense Department, Mr. Shamleffer began a career in law enforcement that spanned more than three decades.  He served as a police officer for the City of Baltimore for 25 years, working in both tactical special operations and the K-9 unit.  He then served as a police officer for the State of Maryland for 8 years.

6.      In 2003, the Baltimore site supervisor for Akal Security recommended that Shamleffer come to work as a Court Security Officer (CSO) guarding the federal judiciary.  He applied and was hired that same year.  His employer was Akal Security, Inc. which contracts with the United States Marshals Service to provide CSOs at the federal courthouse in Baltimore, Maryland.

7.      With his long years of experience in law enforcement, Shamleffer was an ideal choice for a CSO.  He had long and valuable experience in identifying and dealing with threatening individuals and situations.  And that experience served him well.  In fact, he did his job with distinction.

8.      But in May 2009, Akal Security placed Shamleffer on leave without pay from the job he had done with distinction after a doctor for the Marshals Service disqualified him from doing the job because of hearing loss that he corrected with state of the art hearing aids.  The government doctor clearly regarded Shamleffer as having a disability because he said he had a "significant hearing loss" and was unable to localize sound.  His otolaryngologist explained to the defendant on several occasions that Shamleffer was very capable of doing his job with a

hearing aid.  But Akal would not allow him to work, saying that the Marshals Service would not permit it and that Akal was required by their contract with the Marshals Service to remove him from the job when the Marshals Service told them to do so.  And in December 2009, Akal fired Shamleffer outright.

9. Like so many long term law enforcement officers, Shamleffer has hearing loss.  But, each and every day he worked as a CSO, he made sure that he was up to all the requirements of the job.  Unfortunately, the Marshals Service refused to allow him to wear hearing aids for medical testing – even though officers are permitted to wear them on the job.  And, with his hearing aids, Shamleffer could perform all the hearing tasks of the job.  But still the Marshals Service demanded his removal from the job.

10. And, even though Akal Security knew that Shamleffer was eminently qualified to continue working as a CSO, it removed him from the job and then fired him based on his hearing disability because it has surrendered the right to do otherwise to the USMS.  Specifically, Akal Security surrendered its employee to disability discrimination by virtue of its contractual arrangement with the government.  The decision of Akal Security to contract with a party which has the power to discriminate against Akal Security's own employees is per se unlawful discrimination under the ADA.

Disability Discrimination

11. The plaintiff is a qualified individual with a disability.  Akal Security's conduct violates the Americans with Disabilities Act, which prohibits discrimination in employment on the basis of disability.  See 42 U.S.C. 12112(b).  The law defines unlawful discrimination as "participating in a contractual or other arrangement or relationship that has the effect of

subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this subchapter." 42 U.S.C. 12112(b)(2).  Akal Security thus entered into a contractual arrangement to allow the government to discriminate against Akal's employee in direct violation of the statute.  Akal permitted the federal government to direct that the plaintiff be removed from his job due to disability.

12.     The plaintiff timely filed a charge of discrimination to challenge Akal's disability discrimination.  He requested a right to sue from the Equal Employment Opportunity Commission on his charge of discrimination against Akal Security and such right to sue letter has been received.  He timely files this lawsuit to vindicate his rights.  He has exhausted all administrative prerequisites to filing this suit.

## Damages

13.     The damages suffered by the plaintiff include lost wages and benefits as well as compensatory damages for the injuries suffered at the hands of the defendant, including, but not limited to, mental anguish.

14.     Further, because Akal Security's actions were of the sort that render the imposition of exemplary damages appropriate, the plaintiff is entitled to an award of these damages, which he seeks.

## RELIEF REQUESTED

The plaintiff asks this court to enter a judgment:

1. Declaring that the acts and practices complained of in this Complaint are in violation of the Americans with Disabilities Act;

2. Enjoining and permanently restraining these violations of law;

3.  Directing the defendant to pay the plaintiff actual and compensatory damages that he suffered, past and future;

4.  Directing the defendant to pay plaintiff exemplary damages for its conduct in an amount as yet to be ascertained;

5.  Awarding plaintiff pre-judgment interest on the amounts owed at the maximum rate allowed by law;

6.  Awarding plaintiff the costs of this action, together with reasonable attorneys' fees and expert witness fees;

7.  Awarding plaintiff post-judgment interest on the amount of judgment until paid at the maximum rate allowed by law; and

8.  Awarding plaintiff such other relief, legal or equitable, as may be warranted.

    Respectfully submitted,

s/ David Cashdan
USDC MD 08977
Cashdan & Kane, PLLC
1150 Connecticut Avenue N.W.
Washington, D.C.  20036-4129
(202) 862-4353 (telephone)
(202) 862-4331 (fax)

Katherine L. Butler
Texas Bar No. 03526300
1007 Heights Boulevard
Houston, Texas  77008
(713) 526-5677
Fax (713) 526-5691

John Griffin, Jr.
Texas Bar No. 08460300
203 North Liberty Street

Victoria, Texas  77901
(361) 573-5500 – Telephone
(361) 573-5040 – Telecopier


Counsel for the Plaintiff